**Harry E. BROWNLEE and Roy M. Waddell, Plaintiffs–Appellants,**

v.

**LEAR SIEGLER MANAGEMENT SERVICES CORP., a foreign corporation, Defendant–Appellee.**

No. 93–6121.

United States Court of Appeals, Tenth Circuit.

Feb. 2, 1994.

Frederick W. Southern, Jr., Oklahoma City, Oklahoma, for Plaintiffs–Appellants.

George W. Dahnke of Hastie and Kirschner, Oklahoma City, Oklahoma, for Defendant–Appellee.

Before TACHA and BRORBY, Circuit Judges, and BROWN,* Senior District Judge.

TACHA, Circuit Judge.

Plaintiffs Harry E. Brownlee and Roy M. Waddell appeal from a summary judgment entered by the magistrate judge[1] in favor of their employer, defendant Lear Siegler Management Services Corp. (Lear), in this employment discrimination/breach of contract action. In early 1990, plaintiffs signed three-year employment contracts with Lear to work in Saudi Arabia under the direction of the Royal Saudi Air Force (RSAF), in connection with Lear's contractual commitment with the United States Air Force to provide technical assistance and support to the RSAF. Sometime after plaintiffs' arrival in-country, RSAF personnel insisted plaintiffs were unsuitable for their assigned duties— allegedly based on impermissible age considerations—and barred plaintiffs from their work stations. When efforts to dissuade the RSAF proved fruitless, Lear capitulated and terminated plaintiffs. The magistrate judge rejected plaintiffs' resulting claims of age discrimination and breach of contract, and this appeal followed.[2] On de novo review, *see Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990), we affirm.

Based on uncontroverted evidence, the magistrate judge held that Lear "only termi-

nated the Plaintiffs because of directions by the RSAF and not because of their age." App. Vol. I at 122. The judge further noted that "Plaintiffs were hired specifically to perform work under the contract in Saudi Arabia, and if they could no longer perform that contract, there has been no requirement shown that [Lear] must find other work for them in the United States." *Id.* Finally, the judge concluded that "Plaintiffs have failed to prove any legal obligation of the Defendant Lear Siegler for the actions, deeds or thoughts of the RSAF or the [Saudi Arabian government]," *id.* at 123, and granted summary judgment for Lear accordingly.

■ To give rise to an employment discrimination claim for disparate treatment, the employer must act out of an improper discriminatory motivation. *See EEOC v. Flasher Co.,* 986 F.2d 1312, 1319 (10th Cir. 1992); *Drake v. City of Fort Collins,* 927 F.2d 1156, 1160–61 (10th Cir.1991). As the magistrate judge noted, however, plaintiffs do not rely on any evidence indicating Lear ever intended to discriminate on the basis of age. Consequently, plaintiffs' case turns on whether the RSAF's alleged discriminatory intent may somehow be imputed to Lear.

Despite the crucial nature of the issue, plaintiffs do not cite a single authority or even present a developed argument for ascribing the requisite discriminatory animus to Lear in this unusual setting. Rather, we are provided only the unsupported, conclusory assertion that "[h]aving knowledge that your boss wants to discriminate and acquiescing in his discrimination (or failing to take available remedial action) makes the subordinate equally liable for the discrimination." Opening Brief of Appellants at 22. This is not adequate appellate argument. *See Phillips v. Calhoun,* 956 F.2d 949, 953–54 (10th Cir.1992) (quoting *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990), for litigant's responsibility "to

---

* Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

1. The parties consented to disposition of the case by the magistrate judge pursuant to 28 U.S.C. § 636(c)(1). Our jurisdiction therefore arises under § 636(c)(3).

2. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority").

 If plaintiffs mean to suggest that agency principles allow them to impute the RSAF's alleged discriminatory intent to Lear because Lear acted at the direction or compulsion of the RSAF, the law does not support their position. While a principal's *status as an employer* can be attributed to its agent to make the agent statutorily liable for *his own* age-discriminatory conduct, *see* 29 U.S.C. § 630(b); *see, e.g., House v. Cannon Mills Co.,* 713 F.Supp. 159, 161–62 (M.D.N.C. 1988); *cf. Owens v. Rush,* 636 F.2d 283, 286–87 (10th Cir.1980), we know of no authority for imputing a principal's *discriminatory intent* to an agent to make the agent liable for his otherwise neutral business decision. Similarly, while discriminatory practices of an agent may be imputed back to a principal to render the principal liable for its agent's statutory violations, *see, e.g., Shager v. Upjohn Co.,* 913 F.2d 398, 404–05 (7th Cir.1990); *cf. EEOC v. Gaddis,* 733 F.2d 1373, 1380 (10th Cir.1984), we have found no authority for imputing statutory liability in the opposite direction, from a culpable principal to an innocent agent.[3]

We therefore affirm the magistrate judge's decision to grant summary judgment for Lear on plaintiffs' age discrimination claim. Because our disposition is analytically independent of the motivations underlying the conduct of RSAF personnel in the matter, we need not address the admissibility of certain RSAF documents reflecting a negative view of plaintiffs' ages.

 The magistrate judge further held that plaintiffs' breach of contract claim also must fail as a matter of law because "[Lear], pursuant to the unambiguous language of the contract, was entitled to terminate the Plaintiffs if directed to do so by the [Saudi Ara-

bian government], through its agent the RSAF." App. Vol. I at 124. We agree.

As the magistrate judge indicated, the parties' respective contracts of employment specifically provided that Lear had the right to terminate when "directed by the United States Air Force/LSG, *Saudi Arabian Government (SAG)* or any other U.S. Government representative to terminate the employment of the EMPLOYEE." App. Vol. III at 486–87, 501–022 (emphasis added). Plaintiffs insist Lear "can produce no authorized document addressed to [Lear] that 'demands' or 'directs' [Lear] to terminate either Plaintiff's employment," Opening Brief of Appellants at 19, and argue that, therefore, the quoted contract provision does not apply. That provision, however, does not require an "authorized document," and the undisputed evidence regarding the circumstances surrounding plaintiffs' brief employment in-country clearly establishes the RSAF's operative role in their termination. *See* App. Vol. I at 116–17, 121–22.

Plaintiffs argue that the contract between Lear and the United States (Lear–U.S. contract) does not grant the RSAF the same authority to direct termination of personnel that is reflected in the quoted provision from plaintiffs' individual contracts with Lear. While it is not at all clear that such a divergence between these related but distinct contracts would undermine the provision relied on by Lear, we need not reach the question because the alleged conflict is illusory. In fact, the Lear–U.S. contract plainly contemplates that Lear employees may be "terminated from employment under the program because the [United States authorities] *and/or the Royal Saudi Air Force/Saudi Arabian Government* determines such employee[s] may not remain in the program." App. Vol. III at 595 (emphasis added). Other cited provisions identifying the United States personnel responsible for execution or

---

**3.** We note that the possibility of characterizing Lear as an "employment agency," i.e., an entity "regularly undertaking ... to procure employees for an employer," 29 U.S.C. § 630(c), which then could be held liable for neutrally executing the discriminatory directions of its client, *see* authorities discussed in Barbara L. Schlei & Paul Grossman, *Employment Discrimination Law* at

656–67 (2d ed. 1983), and Five–Year Cumulative Supp. at 276–77 (1989), is precluded by the fact that the RSAF is not a covered "employer," as defined in § 630(b) and required by § 630(c), *see, e.g., Shrock v. Altru Nurses Registry,* 810 F.2d 658, 660–61 (7th Cir.1987); *Lavrov v. NCR Corp.,* 600 F.Supp. 923, 929 (S.D.Ohio 1984).

enforcement of the Lear–U.S. contract do not undermine or preclude the authority accorded the RSAF to direct termination under the terms of plaintiffs' contracts with Lear.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.