PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 7/12/96**

TENTH CIRCUIT

MARCIA HAYNES; MELANIE DEAN,

Plaintiffs-Appellees,

v.

GAIL WILLIAMS,

Defendant-Appellant.

and

OKLAHOMA DEPARTMENT OF CORRECTIONS; JACK COWLEY; RAY LITTLE,

Defendants.

No. 95-6425

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. Nos. CIV-93-2068-C and CIV-93-2071-C)

Submitted on the briefs:

Ralph Simon, Tulsa, Oklahoma, for Plaintiffs-Appellees.

Joseph R. Weeks, Oklahoma City University School of Law, Oklahoma City, Oklahoma, for Defendant-Appellant.

Before EBEL, BARRETT, and LUCERO, Circuit Judges.

EBEL, Circuit Judge.

Defendant Gail Williams appeals from a judgment awarding compensatory and punitive damages to plaintiffs Marcia Haynes and Melanie Dean on their claims of sexual harassment and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. Although several substantive, procedural, and evidentiary issues are raised, we find it necessary to address only one: Under the controlling precedent of this circuit, can an individual supervisor be held personally liable under Title VII? We consider this purely legal question de novo, see United States v. Diaz, 989 F.2d 391, 392 (10th Cir. 1993)(construction of federal statute); see also Estate of Holl v. Commissioner, 967 F.2d 1437, 1438 (10th Cir. 1992)(questions of law generally), answer it in the negative, and, accordingly, reverse the judgment entered against Williams.[1]

At the time of the events prompting this suit, Haynes and Dean worked with Williams in a mental health unit at a prison facility operated by the Oklahoma Department of Corrections (DOC). Initially, they complained to DOC internally of improper physical contact and verbal abuse by Williams, the unit psychiatrist. After an investigation, DOC

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

suspended Williams without pay for five days.  Haynes and Dean then lodged complaints

with the state medical licensing board, which ultimately revoked Williams' license to practice

in Oklahoma.  This loss of professional authorization, in turn, cost Williams his job with

DOC.  Haynes and Dean then sought redress in the courts under Title VII, successfully

pursuing their consolidated cases to judgment against Williams and DOC.  They settled their

claims against DOC during post-trial proceedings, and thereafter Williams commenced this

appeal.

In Sauers v. Salt Lake County, 1 F.3d 1122 (10th Cir. 1993), this court adopted what

has clearly become the majority view regarding the limited role of individual supervisors in

Title VII's remedial scheme:[2]

> Under Title VII, suits against individuals must proceed in their official
> capacity; individual capacity suits are inappropriate.  The relief granted under
> Title VII is against the *employer*, not individual employees whose actions
> would constitute a violation of the Act.  We think the proper method for a
> plaintiff to recover under Title VII is by suing the employer, either by naming
> the supervisory employees as agents of the employer or by naming the
> employer directly.  Therefore, because the suit against [plaintiff's supervisor]

---

[2]    See, e.g., Williams v. Banning, 72 F.3d 552, 553-55 (7th Cir. 1995); Tomka v. Seiler Corp., 66 F.3d 1295, 1313-17 (2d Cir. 1995); Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir.), cert. denied, 116 S. Ct. 569 (1995); Cross v. Alabama, 49 F.3d 1490, 1504 (11th Cir. 1995); Grant v. Lone Star Co., 21 F.3d 649, 653 (5th Cir.), cert. denied, 115 S. Ct. 574 (1994); Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 587-88 (9th Cir. 1993), cert. denied, 114 S. Ct. 1049 (1994).  But see Jones v. Continental Corp., 789 F.2d 1225, 1231 (6th Cir. 1986); but cf. Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 & n.1 (4th Cir.)(rejecting individual liability for "plainly delegable decisions," but not disavowing circuit precedent holding supervisor liable for personal wrongdoing, such as sexual harassment), cert. denied, 115 S. Ct. 666 (1994).

3

could proceed only in his official capacity, it operated as a suit against [plaintiff's employer] itself . . .

. . . [A]n individual qualifies as an "employer" under Title VII [solely for purposes of imputing liability to the true employer] if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing, or conditions of employment. In such a situation, the individual operates as the alter ego of the employer, and the employer is liable for the unlawful employment practices of the individual without regard to whether the employer knew of the individual's conduct.

Id. at 1125 (citations and quotations omitted). A year later, this court applied Sauers to reject a Title VII claim asserted against an individual supervisor in his personal capacity. See Lankford v. City of Hobart, 27 F.3d 477, 480 (10th Cir. 1994).

In the meantime, a related issue was considered in Brownlee v. Lear Siegler Management Services Corp., 15 F.3d 976 (10th Cir.), cert. denied, 114 S. Ct. 2743 (1994), a case involving counterpart provisions of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. In Brownlee, the defendant employer terminated the plaintiffs at the direction of a foreign sovereign for whom they specifically had been hired to provide technical assistance. Lacking evidence of age discrimination by their employer, the plaintiffs contended the discriminatory motive of the foreign sovereign principal should have been imputed to their employer, its agent. The court rejected this novel contention, stating, "While a principal's *status as an employer* can be attributed to its agent to make the agent statutorily liable for *his own* age-discriminatory conduct, we know of no authority for imputing a principal's *discriminatory intent* to an agent to make the agent liable for his otherwise neutral business decision." Id. at 978 (citations omitted). Of interest here is not Brownlee's explicit

4

holding rejecting the suggested imputation of discriminatory intent from principal to agent, but its contrasting assumption about the permissible attribution of statutory employer status to the agent, which, at first blush, might appear to run counter to the holdings in Sauers and Lankford.

Considering its analytical context and expository function, however, Brownlee's reference to the agent's potential status as employer need not be read as a deviation from prior precedent. First of all, Brownlee referred to the attribution of statutory employer status to an agent simply as an aside; it was not the holding of the case. Moreover, despite its use of the personal pronoun in the passage quoted above, Brownlee could only have been positing a corporate entity (the defendant management services company that hired the plaintiffs to work for the foreign sovereign), not an individual supervisor, as the agent capable of assuming the principal's status as statutory employer. Sauers (and Lankford) did not address this question of agents-as-employers per se, but instead focussed on the distinct, narrower issue of the personal liability of individual supervisors. Thus, Sauers' specific holding, that "individual capacity suits are inappropriate," 1 F.3d at 1125, did not preclude (or entail) Brownlee's incidental statements about agents generally.

More recently, in Ball v. Renner, 54 F.3d 664 (10th Cir. 1995), another panel of this court concluded that Brownlee had cast doubt on Sauers, so that the personal liability of individual supervisors was now an "open question" in this circuit. Id. at 667-68 (expressly disclaiming any position on the question "because further analysis shows that [the individual

5

defendant] is not liable here even if the approach suggested in <u>Brownlee</u> were to control").
It should be clear from our discussion thus far that there are several reasons why we are not free to approach the question on such terms.  First of all, the pertinent language in <u>Brownlee</u> reflects a different agency principle that leaves <u>Sauers</u>' distinct holding about individual supervisor liability intact.  Moreover, the pertinent language in <u>Brownlee</u> is obiter dictum,[3] while the rule previously recognized in <u>Sauers</u> (and later followed in <u>Lankford</u>) controlled the court's analysis on the merits.  Finally, even if the cases were squarely in conflict, this circuit's rules regarding panel precedent would direct our adherence to <u>Sauers</u> in any event.[4]

There is one consideration raised by the plaintiffs in this case that <u>Sauers</u> does not obviate or foreclose, because it involves remedial changes to Title VII made by the Civil Rights Act of 1991, 42 U.S.C. § 1981a, which were not retroactively applicable to the events in that case.  <u>See generally</u> <u>Landgraf v. USI Film Prods.</u>, 114 S. Ct. 1483 (1994)(discussing retroactivity of 1991 Act).  Under the law controlling in <u>Sauers</u>, "a successful Title VII

---

[3]    <u>Ball</u> notes that <u>Brownlee</u> "rel[ied] in material part on <u>Owens v. Rush</u>, 636 F.2d 283, 286-87 (10th Cir. 1980)" for the dictum discussed above.  <u>Ball</u>, 54 F.3d at 667.  Actually, <u>Owens</u> invoked agency principles to impute an agent's statutory misconduct to a principal, not to hold the agent liable in the principal/employer's place.  <u>See</u> <u>Owens</u>, 636 F.2d at 287.

[4]    A published decision of one panel of this court constitutes binding circuit precedent constraining subsequent panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court.  <u>Finley v. United States</u>, 82 F.3d 966, 974 (10th Cir. 1996)(quoting <u>In re Smith</u>, 10 F.3d 723, 724 (10th Cir. 1993), <u>cert. denied</u>, 115 S. Ct. 53 (1994)).  A pertinent corollary to this principle is that when faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom.  <u>See</u> <u>United States v. Melendez-Garcia</u>, 28 F.3d 1046, 1054 (10th Cir. 1994); <u>cf.</u> <u>United States v. Taylor</u>, 828 F.2d 630, 633 (10th Cir. 1987)(obtaining en banc approval for rejecting first published decision in favor of subsequent contrary authority).

plaintiff was typically limited to reinstatement and back pay as potential remedies," i.e., to "equitable remedies which are most appropriately provided by employers, defined in the traditional sense of the word." Tomka, 66 F.3d at 1314. The 1991 Act, however, "adds compensatory and punitive damages to the remedies available to a victim of intentional discrimination," i.e., "the type [of award] that an individual can normally be expected to pay." Id. at 1315. Plaintiffs argue this particular augmentation of Title VII remedies clarifies Congress' intent that individual supervisors be held personally liable for their discriminatory actions.

While this argument, considered in isolation, has some appeal, we agree with the majority view that, taken as a whole, the language and structure of amended Title VII continue to reflect the legislative judgment that statutory liability is appropriately borne by employers, not individual supervisors. The following excerpts explain the reasoning behind this conclusion:

> [T]he Civil Rights Act of 1991 further shows that Congress never intended individual liability. First, . . . [i]t is a long stretch to conclude that Congress silently intended to abruptly change its earlier vision [of exclusive employer liability] through an amendment to the remedial portions of the statute alone.
>
> Second, although it allowed new types of damages, the Civil Rights Act of 1991 limited the amount of monetary recovery under Title VII . . . by placing caps on the total amount of compensatory and punitive damages that could be awarded to any complaining party. Congress enacted a sliding scale of caps, increasing the possible award as the number of employees of a liable party increased. The lowest cap is $50,000, "in the case of a respondent who has more than 14 but fewer than 101 employees." 42 U.S.C. § 1981a(b)(3)(A). Congress enacted no cap for individuals. That omission implies it did not consider individuals liable.

7

United States EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1281 (7th Cir. 1995);

accord Tomka, 66 F.3d at 1315 ("In addition [to the above concerns], the CRA of 1991 does

not . . . even address the subject of individual liability.").

> Congress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.
>
> . . . .
>
> [I]f Congress had envisioned individual liability under Title VII for compensatory or punitive damages, it would have included *individuals* in [the amended statute's] litany of limitations and would have discontinued the exemption for small employers . . . .

Miller, 991 F.2d at 587-88 & n.2.

Accordingly, we continue to adhere to this court's established, pre-amendment rule

that personal capacity suits against individual supervisors are inappropriate under Title VII.

Sauers, 1 F.3d at 1125. "[T]he employment discrimination statutes have broad remedial

purposes and should be interpreted liberally, but that cannot trump the narrow, focused

conclusion we draw from the structure and logic of the statutes." AIC Sec. Investigations,

Ltd., 55 F.3d at 1282. "Congress has struck a balance between deterrence and societal cost,

and we will not upset that balance." Id.

The judgment of the United States District Court for the Western District of

Oklahoma is REVERSED.

8