**Joyce NEWSOME, Plaintiff,**

v.

**McKESSON CORPORATION, Samantha Matthew Wells & Brent Good, Defendants.**

**No. 2:94–CV–00359G.**

United States District Court, D. Utah, Central Division.

July 30, 1996.

Loren M. Lambert, Richardson, Packard & Lambert, Salt Lake City, UT, for Plaintiff.

Lois A. Baar and Michael A. Zody, Parsons Behle & Latimer, Salt Lake City, UT, for McKesson and Wells.

Janet Hughie Smith, Ray Quinney & Nebeker, Salt Lake City, UT, for Good.

**MEMORANDUM DECISION
AND ORDER**

J. THOMAS GREENE, District Judge.

This matter is before the court on defendants' Motion for Summary Judgment. Plaintiff is represented by Loren M. Lambert; defendants McKesson and Wells are represented by Lois A. Baar and Michael A. Zody; defendant Good is represented by Janet Hughie Smith, but the action is stayed as against defendant Good pending resolution of bankruptcy proceedings.[1] The matter was argued and taken under advisement.

**Facts**

Joyce Newsome was hired by McKesson Corporation in 1986 as a key punch operator and later became a computer operator. She was neither formally discharged nor did she resign, but she took disability leave in 1993 and has not returned to work, allegedly because of conditions in the workplace. The following allegations are assumed to be true for purposes of this pending motion.

Plaintiff asserts that the workplace was one where "philandering" and "riotous partying" occurred among some of McKesson's managers who pursued sexual affairs with female employees. Plaintiff further asserts that female employees who consented to or provided sexual favors were granted preferential treatment and those that did not became the victims of retaliation. Plaintiff claims that managers tolerated a working climate in which female employees were referred to as "bitches", that work place communications were filled with vulgarities, that there was often a display of sexually lewd objects and that in at least one instance an inappropriate video was shown.

Plaintiff asserts that she was exposed to the aforesaid sexually explicit conditions, that she objected and complained to management with no success, and thereafter she faced a hostile work environment.

In August 1992, plaintiff turned fifty and claims that she was regularly referred to as the "old bitch." Plaintiff cites an incident when she was unable to bring some boxes in

---

1. A previously named defendant, Mike Wetch was dismissed by prior court order. Even though affirmative action against defendant Brent Good is stayed, the rulings applicable to defendant Wells hereinafter set forth also apply to defendant Good.

from a warehouse. The lead computer operator, defendant Wells, allegedly said "if you're too old to get the boxes, you're too old to work in this department." Plaintiff asserts that Wells, age 31, was promoted and given preferential treatment even though plaintiff met all the qualifications for supervisory positions and Wells did not. Additionally, plaintiff claims that defendant Wells, as her immediate supervisor, let it be known that even though plaintiff's job was computer operator, she wanted only men working in the computer room.

Plaintiff also alleges that she was the victim of a note writing campaign, rumors, disciplinary warnings and unreasonable actions concerning her vacation days and illnesses. Plaintiff claims that Wells made her life miserable and told people in the workplace of her desire to get rid of Plaintiff.

### Analysis

Defendants' motion is directed against plaintiff's claims of sexual discrimination and sexual harassment/hostile work environment under Title VII, her claim of age discrimination under the Age Discrimination in Employment Act (ADEA), a pendant state claim of intentional infliction of emotional distress, and a pendant claim for tortious interference with economic relations against defendant Wells. These claims will be discussed seriatim.

### Sex Discrimination

■■■ Plaintiff's claim for sex discrimination rests entirely upon a single statement by defendant Wells that she wanted only men in the computer room. Although a sex discrimination claim can be asserted where a female supervisor harasses or discriminates against a female victim because of her sex, the single statement proffered in this case, without more, is not sufficient to be actionable under Title VII. Accordingly, plaintiff's claim of sex discrimination based thereupon cannot survive defendants' motion for summary judgment.

### Sexual Harassment/Hostile Work Environment and Age Discrimination Claims Against McKesson Corporation.

■■■ Plaintiff has demonstrated the existence of disputed issues of material fact on the claim of sexual harassment/hostile work environment as to defendant McKesson Corporation. Resolution of these disputed facts must await trial. Plaintiff has also identified disputed material facts which must be resolved at trial as to the ADEA claim against defendant McKesson Corporation.

### Title VII and ADEA Claims Against Individual Defendants

■■■ The Tenth Circuit interprets the ADEA "in tandem with Title VII, because the ADEA was based in substantial part on Title VII." *Ellis v. United Airlines*, 73 F.3d 999 (10th Cir.1996).[2] Under Title VII and the ADEA, suits may only proceed against employers. Accordingly, the employer can be sued directly. Alternatively, in cases seeking relief against an employer, individuals may be sued in their official capacities as supervising agents. However, unless the status of an employee is such that the employee herself is an "employer," an action against that employee asserting individual liability is subject to dismissal. In *Sauers v. Salt Lake County*, 1 F.3d 1122, 1124 (10th Cir.1993), the 10th Circuit said:

> Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate. The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act. We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly.

In the case of *Brownlee v. Lear Siegler Management Servs. Corp.*, 15 F.3d 976, 978 (10th Cir.1994), the 10th Circuit indicated that there could be personal liability, but

**2.** In *Ellis,* applicants who were denied jobs sued for violation of ADEA and the Airline Deregulation Act. The 10th Circuit said "we generally interpret the ADEA in tandem with Title VII because the ADEA was based in substantial part on Title VII." 73 F.3d at 1007 (citing *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)).

only if "a principal's status as an employer can be attributed to its agent to make the agent statutorily liable for his own age-discriminatory conduct."

In the case at bar, there is no evidence that Wells was able to wield employer-like authority. Wells had the possible ability to assign tasks, but certainly did not have the power to hire or fire employees. Under both *Sauers* and *Brownlee*, plaintiff's claim fails to survive the motion for summary judgment.[3] Accordingly, the Title VII and ADEA claims against individual defendants Wells and Good should be dismissed.

**Intentional Infliction of Emotional Distress**

▆▆▆ Plaintiff claims intentional infliction of emotional distress because of egregious conduct not barred by the exclusive remedy provision of the Utah Workers' Compensation Act.[4] The exclusive remedy provision of the Act shields employers from common law liability for intentional or reckless acts which injure employees in the workplace, unless it is shown that the employer intended or directed the act which caused the emotional distress. *See Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055 (Utah 1991). The proffered evidence in this case is to the effect that some managers at McKesson may have allowed certain allegedly wrongful conduct to occur. However, plaintiff has produced no evidence that her employer intended to cause her emotional distress, nor that it had a policy or intended to create such conditions or directed the conduct which allegedly caused plaintiff's distress. Therefore, the exclusive remedy provision of the Worker's Compensation Act bars plaintiff's claim. Even if the exclusive remedy provision did not bar this claim, however, the acts as alleged fail to rise to the level of "outrageous" conduct necessary to establish such a claim.[5] Accordingly, this court grants defendants' motion concerning the intentional infliction of emotional distress claim.

**Tortious Interference with Economic Relations**

▆▆▆ Finally, plaintiff asserts as against defendant Wells a claim for tortious interference with economic relations. This is on the theory that plaintiff was constructively discharged by reason of an involuntary or coerced resignation.

▆▆▆ Plaintiff relies on *Leigh Furniture & Carpet v. Isom*, 657 P.2d 293 (Utah 1982), in which the Utah Supreme Court recognized the tort of interference with economic relations. The Utah Court rejected both the common law and the Restatement definitions of the tort and instead adopted the requirements for the cause of action as

---

**3.** The 10th Circuit recognized the apparent inconsistency between the holdings in *Sauers* and *Brownlee* as to possible personal liability of individual defendants in *Ball v. Renner*, 54 F.3d 664 (10th Cir.1995). The court said, "because further analysis shows that Renner is not liable here even if the approach suggested in *Brownlee* were to control, we need not and do not seek to resolve the open question." *Id.* at 688.

**4.** The exclusive remedy provision of the Utah Workers' Compensation Act provides:

> The right to recover compensation pursuant to the provisions of this title ... shall be the exclusive remedy against any officer, agent or employee of the employer and the liabilities of the employer imposed by this act shall be in place of any and all other civil liability whatsoever, at common law or otherwise, ... on account of an accident or injury ... arising out of his employment, and no action at all may be maintained against any employer or against any officer, agent or employee of the employer....

Utah Code Ann. § 35-1-60 (1995).

**5.** In the absence of a showing of actual intent to inflict emotional distress, plaintiff must show that the defendant acted in a way that "any reasonable person should have known [that such actions would cause emotional distress]; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality." *Samms v. Eccles*, 11 Utah 2d 289, 358 P.2d 344, 346 (1961). Other Utah cases which have held seemingly outrageous conduct not to be actionable are *Jenks v. Mountain States Tel. & Tel. Co.*, 53 Fair Empl.Prac.Cas. (BNA) 1708, 1720–22, 1989 WL 226145 (D.Utah 1989) (racial slurs and jokes, refusal to train, and termination of employment); *Jackson v. Brown*, 904 P.2d 685 (Utah 1995) (breaking of engagement on day of wedding); *Robertson v. Utah Fuel Co.*, 889 P.2d 1382 (Utah App.1995) (requiring employee to discuss substance abuse); *Dubois v. Grand Central*, 872 P.2d 1073 (Utah App.1994) (abrupt discharge from employment).

set out in *Top Service Body Shop v. Allstate Insurance Co.,* 283 Or. 201, 582 P.2d 1365 (1978):

1) intentional interference with plaintiff's existing or potential economic relations, 2) for an improper purpose or by improper means, 3) causing injury to the plaintiff.[6]

Plaintiff fails to establish that she was ever denied an existing job or a potential economic opportunity because of Wells' interference, or that any interference which caused an injury beyond Wells' interference itself, was wrongful.[7] Also, plaintiff did not proffer evidence that Wells interfered with plaintiff's economic relations by an improper means or with an improper purpose.[8]

Based upon the foregoing, it is hereby

ORDERED, that defendants' motion for summary judgment on the claim of sex discrimination based upon alleged preference of men over women in the workplace is GRANTED; it is

FURTHER ORDERED, that defendants' motion for summary judgment as to the claims of sexual harassment/hostile work environment and age discrimination against individual defendants is GRANTED; it is

FURTHER ORDERED, that defendants' motion for summary judgment as to the claim for intentional infliction of emotional distress is GRANTED; it is

FURTHER ORDERED, that defendants' motion for summary judgment as to the claim for tortious interference with economic relations is GRANTED; it is

FURTHER ORDERED, that defendants' motion for summary judgment as to the claims of sexual harassment/hostile work environment and age discrimination against defendant McKesson Corp. is DENIED.

---

6. The Oregon Supreme Court defined the cause of action as follows:

> Either the pursuit of an improper objective of harming plaintiff or the use of wrongful means that in fact cause injury to plaintiff's contractual or business relationships may give rise to a tort claim for those injuries. 582 P.2d at 1368.
>
> In the subsequent decision of *Straube v. Larson,* 287 Or. 357, 600 P.2d 371 (1979), the Oregon Supreme Court expanded and elaborated upon the elements of the tort:
>
> In *Top Service,* we decided that the defendant's improper intent, motive or purpose to interfere was a necessary element of the plaintiff's case, rather than a lack thereof being a matter of justification or privilege to be asserted as a defense by defendant. Thus, to be entitled to go to a jury, plaintiff must not only prove that defendant intentionally interfered with his business relationship but also that defendant

had a duty of non-interference. *Id.,* 600 P.2d at 374.

7. In this regard, the court said in *Leigh* that "such a claim is made out when interference resulting in injury is wrongful by some measure beyond the interference itself." 657 P.2d at 303 (quoting *Top Service Body Shop v. Allstate Insurance Co.,* 283 Or. 201, 582 P.2d 1365, 1371 (1978)).

8. In *Pratt v. Prodata,* 885 P.2d 786 (Utah 1994) the court said, "an 'improper means' is shown when the plaintiff proves that the defendant's means of interference were contrary to statutory, regulatory or common law or violated an established standard of a trade or profession." An "improper purpose" is satisfied when plaintiff proves that "defendant's ill will predominates over all legitimate economic motivations." *Id.* at 788.