**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CYNTHIA C. LISSAU,
Plaintiff-Appellant,

v.

SOUTHERN FOOD SERVICE,

INCORPORATED; CESAR CASTILLERO,
Defendants-Appellees.

No. 96-2672

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Amicus Curiae.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-95-487-R)

Argued: October 3, 1997

Decided: October 28, 1998

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge,
and HERLONG, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by published opin-
ion. Chief Judge Wilkinson wrote the opinion, in which Judge Her-
long joined. Judge Michael wrote an opinion concurring in parts I and
II of the majority opinion and concurring in the judgment.

_____

**COUNSEL**

**ARGUED:** Terry N. Grimes, KING, FULGHUM, SNEAD, NIXON & GRIMES, P.C., Roanoke, Virginia, for Appellant. Barbara L. Sloan, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. Melissa Robin Davis, TUG-GLE, DUGGINS & MESCHAN, P.A., Greensboro, North Carolina, for Appellee Southern Food Service; William Fain Rutherford, Jr., FLIPPIN, DENSMORE, MORSE, RUTHERFORD & JESSEE, Roanoke, Virginia, for Appellee Castillero. **ON BRIEF:** C. Gregory Stewart, General Counsel, J. Ray Terry, Jr., Deputy General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. J. Reed Johnston, Jr., TUGGLE, DUGGINS & MESCHAN, P.A., Greensboro, North Carolina, for Appellee Southern Food Service.

_____

**OPINION**

WILKINSON, Chief Judge:

Cynthia Lissau appeals the grant of summary judgment on her Title VII claims in favor of defendants Cesar Castillero, her former supervisor, and Southern Food Service, her former employer. She alleges that both defendants are liable for a sexually hostile work environment created by Castillero. Lissau maintains that Castillero is liable in his individual capacity for a Title VII violation. She also argues that Southern, as Castillero's employer, is liable for his misconduct. On the issue of Castillero's liability, we affirm the grant of summary judgment. Employees are not liable in their individual capacities for Title VII violations. On the issue of Southern's liability, we remand for reconsideration in light of Faragher v. City of Boca Raton, 118 S. Ct. 2275 (1998), and Burlington Industries, Inc. v. Ellerth, 118 S. Ct. 2257 (1998).

I.

Cynthia Lissau worked as a sales representative for Southern, a company engaged in the distribution and sale of food products. Her

2

period of employment lasted from March 9, 1987, through December 2, 1988, and again from July 26, 1993, through July 19, 1994. Southern is headquartered in North Carolina and maintains several branch sales offices. Lissau worked in the company's regional office in Roanoke, Virginia.

During her second period of employment, Lissau reported to Castillero, the manager of the Roanoke office. As a manager, Castillero could hire and fire sales representatives and give them sales leads. Castillero reported to David Heller, Southern's Vice President of Marketing, who worked in North Carolina but periodically visited the regional sales offices, including the one in Roanoke.

Lissau alleges that Castillero spoke and acted inappropriately during her second period of employment. First, Castillero allegedly made several provocative statements about Lissau's appearance and implied a sexual interest in her. These ranged from inquiries about whether Lissau was married to a suggestion that she needed to be "pounded all night long." Second, Castillero allegedly touched Lissau on several occasions, including her thigh when he reached down to pick up some paper on the floor. Third, Castillero allegedly made comments of a sexual nature and behaved inappropriately toward employees other than Lissau.

On Friday June 3, 1994, Castillero called Lissau into his office and inquired whether she was unhappy. Lissau did not voice any concerns at that time. On the following day, Lissau, who was at the office, called Castillero at home. She stated that she was upset by his inappropriate comments and requested his assurances that they would cease. Castillero, however, denied all of Lissau's accusations and replied that Lissau had been the one talking about sex and making comments to him.

Shortly thereafter, Lissau contacted Heller. She told Heller that she had a problem with Castillero and that she had confronted him about it. She did not feel safe elaborating further, and she neither described the problem nor suggested, even as a general matter, that it might involve sexual harassment. In this same conversation, Lissau expressed an interest in becoming a company psychologist, a position that did not exist at Southern, in order to handle problems that she

3

was observing in the Roanoke office. Lissau suggested contacting Mike Nussbaum, a senior executive at Southern, about her appointment as a company psychologist. Heller told Lissau that he would contact Nussbaum to arrange an interview.

On July 19, 1994, Castillero fired Lissau, explaining that he understood she was unhappy as a salesperson and had applied for another job.

Since 1985, Southern has maintained a written policy that prohibits sexual harassment and designates several employees to whom a worker can bring an allegation of harassment. The policy is included in Southern's employee handbook and was distributed to the sales forces in all of Southern's regional offices, including the Roanoke office. Lissau's deposition contains conflicting statements about whether she saw this policy. Additional memoranda sent to the regional offices also discussed Southern's sexual harassment policy. Lissau did not notify any of Southern's designated employees or anyone in management about Castillero's alleged conduct.

Lissau filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in September 1994. According to Southern, it first became aware of Lissau's allegations when the EEOC notified it of her charge. Upon learning of the charge, Nussbaum referred the matter to the company's counsel. Counsel investigated the complaint, and, based on its findings, Nussbaum concluded that Lissau's allegations were without merit.

Lissau brought Title VII claims against Castillero and Southern and pendent state law claims against Castillero. The district court granted summary judgment to both defendants on the Title VII claims and dismissed the remaining state law claims without prejudice. It held that Castillero was entitled to summary judgment because supervisors are not individually liable under Title VII. The court further held that Southern was entitled to summary judgment because it did not have notice of Castillero's behavior. While not resolving whether the alleged acts were sufficiently severe or pervasive to create an abusive working environment, the district court did note that the alleged conduct "was not of an egregious nature." Lissau now appeals.

4

II.

We first address Lissau's suit against Castillero. Lissau argues that supervisors are liable in their individual capacities for sexual harassment in violation of Title VII. She contends that Castillero, as her supervisor, was Southern's agent and thereby fell within Title VII's definition of an "employer." We disagree. An analysis of Title VII's language and its remedial scheme leads us to join the other circuit courts and conclude that supervisors are not liable in their individual capacities for Title VII violations.

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). It defines employer as "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person." Id. § 2000e(b). The statute does not define the term "agent."

This court recently interpreted a similar statutory definition of employer. See Birkbeck v. Marvel Lighting Corp. , 30 F.3d 507, 510 (4th Cir. 1994). In Birkbeck, we addressed whether individual officers and supervisors were liable for violations of the Age Discrimination in Employment Act (ADEA). See 29 U.S.C.§ 621. The ADEA defines employer to include certain persons who employ twenty or more workers and "any agent of such a person." Id. § 630(b). We concluded that the inclusion of "agent" did not signal a congressional desire to impose liability on individual supervisors. Instead, it simply represented "an unremarkable expression of respondeat superior-- that discriminatory personnel actions taken by an employer's agent may create liability for the employer." Birkbeck, 30 F.3d at 510. We also noted that it would make little sense to hold a single individual liable when Congress had expressly exempted all companies employing fewer than twenty persons from the statute. Id. Accordingly, we rejected the claim of individual liability under the ADEA.

The Title VII definition of employer must be read in the same fashion as the ADEA definition of employer. Title VII defines employer to include certain persons who employ fifteen or more workers and,

5

like the ADEA, "any agent of such a person." Compare 42 U.S.C. § 2000e(b), with 29 U.S.C. § 630(b); see also Wathen v. General Elec. Co., 115 F.3d 400, 404 n.6 (6th Cir. 1997) (noting that Title VII and ADEA "define `employer' essentially the same way"); EEOC v. AIC Sec. Investig., Ltd., 55 F.3d 1276, 1280 n.1 (7th Cir. 1995) (noting that the two definitions are "essentially identical"). We already have observed that Title VII is the ADEA's "closest statutory kin." Birkbeck, 30 F.3d at 510 (citations omitted). Thus, reading Title VII to foreclose individual liability represents the only logical extension of Birkbeck. Like the ADEA, Title VII exempts small employers; it would be incongruous to hold that Title VII does not apply to the owner of a five-person company but applies with full force to a person who supervises an identical number of employees in a larger company. See id. We interpret the inclusion of agent in Title VII's definition of employer simply to establish a limit on an employer's liability for its employees' actions. See Birkbeck, 30 F.3d at 510-11; Miller v. Maxwell's Int'l. Inc., 991 F.2d 583, 587 (9th Cir. 1993).

The 1991 amendments to Title VII further bolster our conclusion that individuals are not liable under that Act. Prior to 1991, remedies under Title VII were ordinarily limited to back pay and equitable relief such as reinstatement that "typically are only obtainable from an employing entity, not from a mere individual." AIC, 55 F.3d at 1281 (citation omitted); see also Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir. 1995). In 1991, Congress added compensatory and punitive damages to the list of available remedies. See Civil Rights Act of 1991, § 102, Pub. L. No. 102-166, 105 Stat. 1071, 1072-73 (codified at 42 U.S.C. § 1981a) (CRA). In the CRA's findings, Congress noted that "additional remedies under Federal law are needed to deter unlawful harassment and intentional discrimination in the workplace." Id. § 2, 105 Stat. at 1071. Congress tied the amount of available compensatory and punitive relief to the size of the employer. Id. § 102(b)(3), 105 Stat. at 1073 (codified at 42 U.S.C. § 1981a(b)(3)). For example, companies that employ 200 workers are liable to each complainant for a maximum of $100,000 in compensatory and punitive damages while companies employing 100 workers are liable for a maximum of $50,000. Id. § 102(b)(3)(A)-(B), 105 Stat. at 1073 (codified at 42 U.S.C. § 1981a(b)(3)(A)-(B)). This sliding scale of liability does not stipulate an amount in cases where a plaintiff seeks to hold an individual supervisor liable.

6

These amendments to the remedial scheme thus suggest that Congress only intended employers to be liable for Title VII violations. Nowhere does the CRA mention individual liability as an available remedy. Had Congress felt that individual liability was "needed to deter unlawful harassment and intentional discrimination," surely it would have included this remedy in the 1991 Amendments. See Wathen, 115 F.3d at 406; Tomka, 66 F.3d at 1315; Miller, 991 F.2d at 588 n.2. Instead, the linkage between the size of the employer and the amount of available relief clearly indicates a congressional intent to limit plaintiffs' remedies to suits against employers. To permit individual liability would improperly expand the remedial scheme crafted by Congress.

Finally, we note that a large number of circuit courts have held that individual supervisors are not liable under Title VII. In fact, every circuit that has confronted this issue since the enactment of the CRA has rejected claims of individual liability. These circuits have founded this conclusion on the language of Title VII and the fact that its remedial scheme seems so plainly tied to employer, rather than individual, liability. See Tomka, 66 F.3d at 1317; Dici v. Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996); Grant v. Lone Star Co. , 21 F.3d 649, 653 (5th Cir. 1994); Wathen, 115 F.3d at 406; Williams v. Banning, 72 F.3d 552, 554 (7th Cir. 1995); Smith v. St. Bernards Regional Medical Ctr., 19 F.3d 1254, 1255 (8th Cir. 1994); Miller, 991 F.2d at 588; Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996); Smith v. Lomax, 45 F.3d 402, 403 n.4 (11th Cir. 1995); Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir. 1995). We join these courts and reiterate that supervisors are not liable in their individual capacities for Title VII violations. Accordingly, the district court properly granted summary judgment to Castillero.

III.

We next address Lissau's claims against Southern. After the parties had argued this issue, the Supreme Court agreed to decide two cases addressing when an employer could be liable for a supervisor's sexual harassment. See Faragher v. City of Boca Raton , 118 S. Ct. 2275; Burlington Indus., Inc. v. Ellerth, 118 S. Ct. 2257. We held this appeal in abeyance pending the Supreme Court's decisions. Now that the Court has decided those cases and announced new criteria on

employer liability, we remand this case to the district court to apply those criteria to Lissau's claims.

The district court granted summary judgment to Southern on the ground that Southern lacked notice of Castillero's behavior. The Supreme Court has since announced a more complete rule governing an employer's liability for a supervisor's sexual harassment. In both Faragher and Ellerth, the Supreme Court articulated the following standard:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Faragher, 118 S. Ct. at 2292-93 (citation omitted); Ellerth, 118 S. Ct. at 2270 (citation omitted). The Court thus rejected the rule, relied on by the district court, that an employer is liable only if it has notice of a supervisor's offensive behavior. It reaffirmed, however, the longstanding principle that employers are not "always automatically liable for sexual harassment by their supervisors." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 72 (1986) (citation omitted); see Faragher, 118 S. Ct. at 2285; Ellerth, 118 S. Ct. at 2270.

The district court did not have the benefit of these decisions when it granted summary judgment to Southern, and the parties did not conduct discovery with these criteria in mind. Indeed, it appears the parties constructed the record primarily around the earlier rule that an absence of notice afforded absolute immunity to employer liability. Remand will enable the parties to develop a more complete record, and the district court should apply the newly announced criteria to

8

those facts. After the facts are developed in light of Faragher and Ellerth, the district court is free to consider a renewed motion for summary judgment on remand.*

We express no view, however, on the proper disposition of such a motion. After Faragher and Ellerth, Southern may be able to interpose an affirmative defense based on its efforts to prevent and correct harassment in its workplace and Lissau's failure to take advantage of the opportunities the company afforded her. Faragher and Ellerth make clear that an employer may advance such a defense where no discriminatory tangible employment action was taken. See Faragher, 118 S. Ct. at 2293; Ellerth, 118 S. Ct. at 2270. Tangible employment actions, if not taken for discriminatory reasons, do not vitiate the affirmative defense. If Lissau's termination did not result from a refusal to submit to Castillero's sexual harassment, then Southern may advance this defense. Under the defense, evidence that Southern

_____

*Our concurring colleague declares that "Faragher and Ellerth signal . . . that fewer sexual harassment cases will be resolved on summary judgment." See post at 12. We think this reads too much into Faragher and Ellerth. Those cases in no way indicate that a variation from the normal requirements of Rule 56 is appropriate or that grants of summary judgment will be infrequent. See Faragher, 118 S. Ct. 2283-84 (noting with approval that the Courts of Appeals have demanded that a supervisor's conduct must be extreme and citing a collection of cases dismissing claims on summary judgment); id. at 2291-92 (rejecting an alternative to the adoption of the affirmative defense because under the alternative "[j]udgment calls would often be close, . . . and the temptation to litigate would be hard to resist"); id. at 2292 (adopting an affirmative defense because it "would avoid this particular temptation to litigate"). This concern over the cost of excessive litigation would be inconceivable if the Supreme Court intended that sexual harassment cases be exempted in some way from the usual standards of summary judgment. And we can conceive of no basis in law for simply declaring an exception to Rule 56 for certain categories of cases. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 524 (1993) (Neither "`trial courts[n]or reviewing courts should treat discrimination differently from other ultimate questions of fact'" (quoting United States Postal Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983))). Many cases involve a reasonable care requirement and a preponderance burden yet summary judgment standards are not suspended on account of that. Rule 56 is an integral part of the Federal Rules, not a "shortcut." See post at 12.

9

had disseminated an effective anti-harassment policy provides compelling proof of its efforts to prevent workplace harassment. See Faragher, 118 S. Ct. at 2293; Ellerth, 118 S. Ct. at 2270; Meritor, 477 U.S. at 72-73. And any evidence that Lissau failed to utilize Southern's complaint procedure "will normally suffice to satisfy [its] burden under the second element of the defense." Faragher, 118 S. Ct. at 2293; Ellerth, 118 S. Ct. at 2270. If, however, the district court finds no effective anti-harassment policy was in place or that Lissau did avail herself of the policy, then summary judgment would be inappropriate. See Faragher, 118 S. Ct. at 2293 (sexual harassment policy generally necessary except for "employer of a small workforce, who might expect that sufficient care to prevent tortious behavior could be exercised informally").

Alternatively, the district court may address whether Castillero's conduct was sufficiently severe and pervasive to constitute discrimination under Title VII. Title VII does not provide a remedy for every instance of verbal or physical harassment in the workplace. Oncale v. Sundowner Offshore Servs., Inc., 118 S. Ct. 998, 1002 (1998). Relief is unavailable where the alleged conduct "is not severe or pervasive enough to create an objectively hostile or abusive work environment" or where the victim "does not subjectively perceive the environment to be abusive." Harris v. Forklift Sys., Inc. , 510 U.S. 17, 21 (1993). "A recurring point in these opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 118 S. Ct. at 2283 (citation and internal quotation marks omitted). Here the district court observed that Castillero's behavior "was not of an egregious nature" but declined to decide whether his conduct rose to the level of actionable harassment. If Castillero's conduct was not severe and pervasive enough to create a hostile work environment or if Lissau did not perceive the environment to be abusive, summary judgment in favor of Southern would be appropriate. See, e.g., Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772-74 (4th Cir. 1997) (granting summary judgment to employer where conduct not severe and pervasive); see generally 1 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 805-07 n.290 (collecting cases). If, on the other hand, the conduct created a discriminatorily abusive work environment (or there is a genuine

10

issue of material fact thereon), then summary judgment for Southern would be inappropriate. See Harris, 510 U.S. at 22.

We identify these issues simply to provide some guidance to the district court on remand. We express no view, however, on whether summary judgment is appropriate on either ground. Until the parties have briefed the issue of Southern's liability in light of the Supreme Court's recent decisions and until the district court has reviewed the entire record, it would be premature for us to rule.

IV.

We affirm the grant of summary judgment in favor of Castillero. We reverse the grant of summary judgment in favor of Southern and remand the case for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

MICHAEL, Circuit Judge, concurring in part and concurring in the judgment:

I concur in parts I and II of the majority opinion, and I concur in the judgment because I agree that the case must be remanded for further proceedings in light of Faragher v. City of Boca Raton, 118 S. Ct. 2275 (1998), and Burlington Industries, Inc. v. Ellerth, 118 S. Ct. 2257 (1998). I cannot join in part III of the opinion because it is premature to suggest ways in which summary judgment might once again be granted to Southern, the employer. The prospects for summary judgment look doubtful to me because the new Faragher-Ellerth defense depends on facts and because Lissau's allegations, if proven true, would show that she was subjected to actionable harassment. In addition, it should be made clear that the new defense is not available to the employer when a supervisor takes a tangible employment action against the employee as part of his harassment.

I.

A.

I believe that we are ill-advised to encourage the district court to consider, on summary judgment, whether Southern has established

11

the new Faragher-Ellerth affirmative defense. I say this because the defense is especially fact intensive. To prove the defense, Southern must show (a) that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and (b) that Lissau "unreasonably failed to take advantage of any preventive or corrective opportunities provided by [Southern] or to avoid harm otherwise." Ellerth, 118 S. Ct. at 2270. Nowhere does the Supreme Court suggest summary judgment as a shortcut in dealing with this new defense. Rather, the Court recognizes the factual nature of the defense by emphasizing that it is "subject to proof by a preponderance of the evidence." Id. Moreover, by employing terms such as "reasonable care" and "unreasonably failed," the defense focuses on the reasonableness of conduct on the part of both the employer and the employee. When the reasonableness of conduct is in question, summary judgment is rarely appropriate because juries have "unique competence in applying the reasonable person standard" to the facts of the case. See 10A Charles Alan Wright et al., Federal Practice and Procedure § 2729, at 533 (3d ed. 1998).

The majority recognizes that facts relating to the new defense must be developed on remand. Until that happens, we cannot know whether it is possible to keep this case on the summary judgment track. It is doubtful that we can, given the fact-intensive nature of the Faragher-Ellerth defense. Whatever that outcome, as of now too many facts are unknown, and the reasonableness of too much conduct is likely to be contested, for us to suggest any scenario for summary judgment under the new defense. If Faragher and Ellerth signal anything, it is that fewer sexual harassment cases will be resolved on summary judgment.

B.

I also believe that the majority, in its discussion of the potential for summary judgment, impermissibly expands Southern's opportunity to assert the Faragher-Ellerth defense. The majority begins by correctly acknowledging that "Faragher and Ellerth make clear that an employer may advance the defense where no discriminatory tangible employment action was taken," ante at 9. But the majority goes on to say that "[i]f Lissau's termination did not result from a refusal to submit to Castillero's sexual harassment, then Southern may advance this

12

defense." Id. To the extent the majority is suggesting that the defense is unavailable to Southern only if Lissau's refusal to submit triggered her firing, it is incorrect. The defense is unavailable in a broader range of circumstances. It is not available in a hostile work environment case when the supervisor takes a tangible employment action against the employee as part of the harassment. Thus, if Lissau's termination was connected to Castillero's sexual harassment of her, Southern may not advance the defense. See Ellerth, 118 S. Ct. 2257 at 2270 ("No affirmative defense is available . . . when the supervisor's harassment culminates in a tangible employment action").

II.

The majority also says that "summary judgment in favor of Southern would be appropriate" if Castillero's conduct was not severe or pervasive enough to create a hostile work environment. See ante at 11. This suggestion appears to be prompted in part by the district court's comment (in dictum) that Castillero's conduct "was not of an egregious nature." Lissau v. Southern Food Serv., Inc., No. 95-487-R, slip op. at 8 (W.D.Va. Oct. 10, 1996). This dictum bears serious reexamination. If Lissau's allegations are true, a reasonable jury could find that she was subjected to hostile work environment harassment.

Lissau alleges that Castillero's harassment of her began with their first contacts and continued throughout her one-year tenure at Southern. Castillero's predecessor hired Lissau and gave her some time to close cases at her old job, where she was a social worker. Shortly before she was ready to begin work at Southern, Lissau telephoned the company and was referred to the new manager, Castillero. In this first conversation Castillero asked Lissau if she was married, and she replied that she was not. Castillero scheduled a meeting with Lissau, which occurred within the next day or two. At that initial face-to-face meeting in July 1993, Castillero was flirtatious. He touched Lissau's blouse, saying it was "nice silk." Castillero then asked Lissau if she went away with men on weekends, and Lissau replied that she did not, noting that she was a single parent.

The next week Lissau went to Southern's office to drop off some items and to tell Castillero that she was going to the beach for a day or two before beginning work. Castillero made a comment about Lis-

13

sau's new hairstyle and hinted that she must be going to the beach to pick up men. Lissau replied that she was going with two of her married female friends, who were social workers.

After Lissau started work in late July 1993, Castillero would comment on her legs whenever she wore a skirt, saying, for example, "Look at those legs." He also made frequent comments about her hair, such as, "Your hair is so pretty and black." Lissau tried to deflect Castillero's comments by simply saying "thank you" and moving on. As time went on, Castillero's comments became more direct. He told Lissau that he was attracted to her and asked her whether she thought they would ever "be together." At times Castillero intimated that they should have an affair. Lissau regularly told him that she was unavailable and that he was also (Castillero was married).

On October 31, 1993, Castillero called Lissau at home to get her sales report for the month, which did not meet Lissau's personal goal. Lissau began to cry, and Castillero said, "You're crying about your sales -- that makes me want to come and hold you." In late November 1993 Lissau and a co-worker staffed a sales booth at a home show at the Roanoke Civic Center. After the show Castillero suggested that she and her co-worker go out to dinner with him. Lissau felt the dinner was a command performance because Castillero ostracized employees who would not socialize with him after work. After they left the restaurant at the end of the evening, Castillero grabbed Lissau in the middle of the street and hugged her passionately for several seconds. A few days later Castillero told Lissau that when he "felt her" that night, "he felt like he had `made love to [her] before.'"

In December 1993 Castillero learned that Lissau's daughter was out of town for a few days, and he suggested that the two of them should go to Lissau's house for a "wild party." Lissau told him that she was not interested. By this time Castillero was often telling Lissau that she needed to have sex, and he even asked her when she last had sex. In March 1994 when Lissau was in a co-worker's office, Castillero walked in. Castillero dropped a piece of paper near where Lissau was sitting. As he bent over to pick it up, he put his hand on Lissau's thigh and left it there until she pushed it away. The next week Castillero went into Lissau's office and shut the door. He moved very close to her and told her that she needed "some good sex" and that she

14

"needed to be `pounded all night long.'" Lissau became sick to her stomach and cannot remember how she responded.

Castillero persisted in this conduct over the course of a year, even though Lissau repeatedly expressed her discomfort and lack of interest. Lissau became depressed by Castillero's comments and actions, and she struggled to do her work. Finally, in June 1994 Lissau called Castillero at home and told him that she was upset with his sexual comments, that she was upset with his sexual harassment, and that she wanted assurances that he would stop the harassment and leave her alone. Castillero denied any harassment and accused Lissau of having mental problems. About a month later Castillero called Lissau into his office and fired her, saying that he understood that she was unhappy in her job.

When these facts are taken as true, as they must be for summary judgment purposes, Castillero's conduct was severe or pervasive enough to be actionable under Title VII.

15