**Daniel S. RICHARDSON and Jamee L. Richardson, Plaintiffs,**

v.

**VALLEY ASPHALT, INC., a Utah corporation, Western Aggregates, Inc., a Utah corporation, and Does I-X, Defendants.**

**No. 2:00CV378K.**

United States District Court, D. Utah, Central Division.

Aug. 21, 2000.

Laura N. MacPherson, Spence Moriarity & Schuster, Jackson, WY, Jeffrey D. Gooch, Spence Moriarity & Schuster, Salt Lake City, UT, for Daniel S. Richardson, husband, Jamee L. Richardson, wife, plaintiffs.

Lynn S. Davies, Mark L. McCarty, Martha Knudson, Richards Brandt Miller & Nelson, Salt Lake City, UT, Holly Bierkan Platter, Eisenberg & Gilchrist, Salt Lake City, UT, for Valley Asphalt, Western Aggregates, defendants.

## ORDER

KIMBALL, District Judge.

Before the court are five motions: (1) Defendants' Motion to Dismiss for Lack of Jurisdiction; (2) Defendants' Motion to Dismiss; (3) Defendant Western Aggregates' Motion to Dismiss; (4) Defendants' Motion to Bifurcate Trial; and (5) Defendants' Motion for Extension of Time to Answer Complaint. A hearing on these motions was held on August 2, 2000. At the hearing, Defendants Valley Asphalt and Western Aggregates were represented by Lynn S. Davies. Plaintiffs were represented by Laura N. MacPherson and Jeffrey D. Gooch. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to these motions. Now being fully advised, the court renders the following Order, addressing each motion in turn.[1]

## I. MOTION TO DISMISS FOR LACK OF JURISDICTION

### A. FACTUAL BACKGROUND

On or about September 16, 1999, Plaintiff Daniel S. Richardson ("Mr. Richardson") filed a charge of discrimination with the Utah Anti-Discrimination and Labor Division and the Equal Employment Opportunity Commission ("EEOC" or the "Commission"), alleging that he had been discriminated against in violation of the Americans with Disabilities Act ("ADA"). On or about February 24, 2000, the EEOC issued a Notice of Right to Sue (the "Right-to-Sue Notice") to Mr. Richardson. He received it on or about March 6, 2000. Thus, the EEOC issued the Right-to-Sue Notice approximately 161 days after the charge was filed.[2] Mr. Richardson filed suit on May 5, 2000, more than 232 days after the initial charge was made.

### B. DISCUSSION

Defendants claim that the EEOC's failure to wait the 180 days specified in Title VII before issuing the Right-to-Sue Notice deprives this court of jurisdiction or otherwise mandates that the court dismiss Mr. Richardson's First Cause of Action, based on the ADA, and send it back to the EEOC to allow the EEOC to complete its statutory obligation. Plaintiffs, on the other hand, argue that the premature issu-

---

1. This Court will grant a motion to dismiss for failure to state a claim only when it appears that plaintiffs can prove no set of facts in support of the claims that would entitle them to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff. *Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir.1999); *Riddle v. Mondragon,* 83 F.3d 1197, 1201 (10th Cir. 1996). The Federal Rules of Civil Procedure "erect a powerful presumption against rejecting pleadings for failure to state a claim." *Cottrell,* 191 F.3d at 1251. Granting a defen-dant's motion to dismiss is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Id.* (citations omitted).

2. Defendants claim that the charge was filed on November 23, 1999--not September 16, 1999--and thus, the EEOC issued the letter 87 days early, rather than 19 days early, as Plaintiffs contend. This dispute is not material to the resolution of this motion.

ance of the Notice does not preclude the filing of a federal lawsuit. Plaintiffs argue that by filing this motion, Defendants are simply attempting to delay this case because if Mr. Richardson dies before the matter goes to trial, Defendants prevail. *See Allred v. Solaray, Inc.,* 971 F.Supp. 1394 (D.Utah 1997).

At issue is the validity of a regulation promulgated by the EEOC concerning its obligations under Title VII. Under Title VII, a right-to-sue notice from the EEOC is a prerequisite to filing an action. At the center of this debate is Section 2000e-(5)(f)(1) of Title VII, which provides:

> If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference ... (from a state agency), whichever is later, the Commission has not filed a civil action under this section ..., or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge.

42 U.S.C. § 2000e-5(f)(1). Title VII also empowers the EEOC "to issue, amend, or rescind suitable procedural regulations to carry out the provision of [the act]." 42 U.S.C. § 2000e-12(a).

Pursuant to Section 2000e-12(a), the EEOC, in 1977, promulgated a regulation that permits a right-to-sue notice to be issued before the expiration of 180 days if the Commission certifies that it "is probable that the Commission will be unable to complete its administrative processing of the charge within the 180 days ... and has attached a written certificate to that effect." 29 C.F.R. § 1601.28(a)(2).

The question, then, is whether the EEOC's regulation unlawfully defeats the statutory time allocation specified in Title VII, rendering a premature right-to-sue notice invalid. With no ruling from the United States Supreme Court, the regulation's validity has been the subject of significant debate, with a split among the three circuits that have addressed the issue.

The District of Columbia Circuit recently determined that after examining Title VII as a whole, and in light of Title VII's "express direction to the Commission that it investigate all charges," referring to 2000e5(b), "Congress clearly intended to prohibit private suits within 180 days after charges are filed." *Martini v. Federal Nat'l Mortgage Ass'n,* 178 F.3d 1336, 1346-47 (D.C.Cir.1999), *cert. dismissed,* —— U.S. ——, 120 S.Ct. 1155, 145 L.Ed.2d 1065 (2000). Therefore, the court found that the EEOC's regulation is contrary to Title VII's 180-day waiting period. *Id.*

The *Martini* court recognized that the 180-day waiting period is not jurisdictional, but a requirement that, "like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* at 1348 (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). However, the court determined that no equitable considerations warranted an exception to the 180-day rule. *Id.* The court disagreed with the plaintiff's and EEOC's argument that requiring a complainant to wait 180 days when the agency knows that it will be unable to investigate would be futile. *Id.* at 1347. The *Martini* court reasoned that if the EEOC did not have the authority to permit early suits,

> the EEOC would face more internal pressure, along with external pressure from complainants, to improve its investigatory capacities--for example, by streamlining its procedures for handling charges, by setting higher case clearance goals, by improving training, or by reallocating staff and other resources among regions or between national and regional offices--so that it could resolve as many charges as possible within 180

# 1336

days. If such efforts proved inadequate to achieve statutory compliance, then the Commission would be forced to ask Congress to appropriate additional funds. *Id.* at 1347. Consequently, after a jury verdict for the plaintiff, the *Martini* court vacated the district court's judgment and remanded the case with instructions to dismiss the plaintiff's complaint without prejudice, allowing the plaintiff to file a new complaint after the EEOC attempted to resolve her charge for an additional 159 days. *Id.*

Numerous district courts, including one within the Tenth Circuit, have also concluded that the EEOC's regulation unlawfully defeats Title VII's mandatory waiting period. *See, e.g., Shepherd v. United States Olympic Committee,* 94 F.Supp.2d 1136 (D.Colo.2000); *Martini,* 178 F.3d at 1341 (citing cases); *see also Seybert v. West Chester Univ.,* 83 F. Supp. 2d 547, 550 n. 7 (E.D.Pa.2000) (disagreeing with *Martini* but citing cases in accord with *Martini*).

However, the Ninth and Eleventh Circuits, along with dozens of district courts--including one in the Tenth Circuit--have found that the regulation is valid, deferring to the EEOC's interpretation of its role under Title VII, in light of the ambiguity of the statutory language and the legislative history. *See Sims v. Trus Joist MacMillan,* 22 F.3d 1059, 1061-62 (11th Cir.1994); *Brown v. Puget Sound Elec.,* 732 F.2d 726, 729 (9th Cir.1984), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985); *Saulsbury v. Wismer & Becker, Inc.,* 644 F.2d 1251, 1257 (9th Cir.1980); *Bryant v. California Brewers Ass'n,* 585 F.2d 421, 425 (9th Cir.1978), *vacated and remanded on other grounds,* 444 U.S. 598, 100 S.Ct. 814, 63 L.Ed.2d 55 (1980); *Hall v. FlightSafety Int'l, Inc.,* 106 F.Supp.2d 1171, 1180–1182 (D.Kan.2000); *see also Seybert v. West Chester Univ.,* 83 F.Supp.2d 547, 550 n. 8 (E.D.Pa.2000) (so finding and citing cases); *Commodari v. Long Island Univ.,* 89 F. Supp. 2d 353, 382 (E.D.N.Y.2000) (so finding and citing cases); *Connor v. WTI,* 67 F.Supp.2d 690, 692 n. 1 (S.D.Tex.1999) (so finding and citing cases).

In *Saulsbury,* the Ninth Circuit found that "Section 2000e-5(f)(1) simply requires the EEOC to issue a notice of right-to-sue if it has failed to file suit or arrange a conciliation agreement within 180 days. Nowhere does the statute prohibit the EEOC from issuing such notice before the expiration of the 180-day period." *Id.* at 1257 (quotation omitted). Similarly, in *Sims v. Trus Joist MacMillan,* 22 F.3d 1059, 1061 (11th Cir. 1994), the Eleventh Circuit also determined that Title VII does not prohibit the EEOC from issuing an early right-to-sue notice prior to the expiration of the 180-day period. *Id.* at 1061. It recognized that the purpose of the 180-day period is to protect the aggrieved party from extended administrative proceedings or bureaucratic backlog and that "it is pointless for the aggrieved party to stand by and mark time until the 180-day period expires" if the EEOC determines that it cannot investigate the charge within the 180-day period. *Id.*

The Tenth Circuit has not addressed this issue. In *Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221 (10th Cir.1997), the Tenth Circuit, faced with a premature right-to-sue notice, determined that the defendant's challenge regarding that notice did not go to the jurisdiction of the district court. *Id.* at 1228. The court stated that subsequent to the Supreme Court's holding in *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Tenth Circuit has regarded Title VII's timeliness requirements "as being in the nature of statutes of limitations and thus subject to waiver or forfeiture, rather than being jurisdictional. *Id.* Thus, the court determined that the premature issuance of the notice was, at most, an affirmative defense which the defendant had waived by failing to take a cross-appeal. *Id.* Accordingly, the court did not reach the issue

of the validity of 29 C.F.R. § 1601.28(a)(2). Thus, this court must determine whether the regulation is valid.

Under *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), there is a two-tiered analysis. First, the court must determine whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the inquiry because the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. *Id.* at 842-43, 104 S.Ct. 2778. However, if the court determines that Congress has not directly addressed the issue, the court must determine whether the agency's answer is based on a permissible construction of the statute. *See id.* Both the statutory language and the legislative history should be examined. *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). If the intent of Congress is unclear or is ambiguous, deference should be given to the agency's interpretation so long as it is reasonable. *See Chevron,* 467 U.S. at 844, 104 S.Ct. 2778.

Here, the statutory language of Section 2000e-(5)(f)(1)--and Title VII as a whole--is not particularly helpful. It is clear that there are two instances in which the EEOC is obligated to issue a right-to-sue notice: (1) after 180 days have passed without conciliation or filing suit, or (2) upon dismissal of the charge. Thus, the language clearly contemplates, and indeed mandates, EEOC action within 180 days. However, the language can be read to impose a maximum amount of time for the EEOC to investigate and resolve a charge before an individual may file a private suit. *See Berry v. Delta Air Lines, Inc.,* 75 F.Supp.2d 890, 891 (N.D.Ill.1999) (180-day period can just as easily be read to be a maximum waiting period, as it can a minimum). Nothing in Title VII appears to prohibit the EEOC from issuing an early right-to-sue notice prior to the expiration of the 180-day period. This court disagrees

with the reasoning of the *Martini* court that the language of Section 2000e5(b), which requires the EEOC to investigate *all charges,* read in light of Section 2000e–5(f)(1), reveals that Congress has spoken to the precise question at issue, prohibiting the EEOC from issuing a right-to-sue notice prior to 180 days after the charge is filed.

The legislative history of Title VII is also ambiguous. As the court in *Seybert v. West Chester University,* 83 F.Supp.2d 547 (E.D.Pa.2000) stated:

> Some of [the legislative history] depicts the EEOC as the preferred tribunal for resolving employment discrimination claims, observing that "[a]dministrative tribunals are better equipped to handle the complicated issues involved in employment discrimination cases." H.R. Rep. No. 92-238 (1971), reprinted in 1972 U.S.C.C.A.N. 2137, 2146. With this in mind, it can be said that Congress enacted the 180-day waiting provision to force complainants "[to] sit ... around [for] 6 months," in the hope that administrative processing would lead to conciliation. 118 Cong. Rec. 1069 (1972). Private lawsuits, Congress envisioned, would be "the exception and not the rule." 118 Cong. Rec. 7168.

> Concomitantly, it was stated in the House that "[t]he primary concern must be protection of the aggrieved person's option to seek a prompt remedy in the best manner available." H.R. Rep. No. 92-238 (1971), reprinted in 1972 U.S.C.C.A.N. 2137, 2148. The 180-day provision was "designed to make sure that the person aggrieved does not have to endure lengthy delays if the [EEOC] ... does not act with due diligence and speed." *Id.* It "allow[s] the person aggrieved to elect to pursue his or her own remedy under this title where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution."

*Id.* at 551-52. In addition, as the *Seybert* court recognized:

While the EEOC must issue a right to sue letter after 180 days, Title VII did not deal with the problems of an agency ill-equipped to sweep back increasing waves of employment discrimination and disability claims. The EEOC has a huge bureaucratic workload in which only a certain portion of the filings can be processed within the allocated time period. The split in the Circuits and the variety of district court decisions reflect how statutory construction has produced differing views on the validity of the Commission's regulations.

*Id.* at 552.

Because this court has concluded that Title VII is certainly ambiguous in both its language and its legislative history, *Chevron* dictates that the court must ask whether the EEOC's interpretation of Title VII "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778. This court agrees with the Ninth and Eleventh Circuits and finds that the EEOC's interpretation of Title VII is a permissible construction of the statute, read in light of both the language and the legislative history. Indeed, Congress stated that "'[t]he primary concern must be protection for the aggrieved person's option to seek a prompt remedy in the best manner available." *Sims*, 22 F.3d at 1063 (quoting 1972 U.S.C.C.A.N. at 2148). As the *Sims* court recognized, "[w]hen the Commission cannot process a claimant's charge within the prescribed time period and certifies that it is unable to process such charge, the avenue for a 'prompt remedy' is though the courts." *Id.*

Moreover, even if the *Martini* court were correct that the language of Title VII, read as a whole, is unambiguous, and that the regulation is contrary to the EEOC's obligation under Section 2000e-5(f)(1), equitable considerations undoubtedly militate in favor of allowing Plaintiffs in this case to proceed in federal court. The EEOC has already determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days of the filing of the charge. Plaintiffs should not be penalized for the EEOC's failure to wait 180 days before issuing the Right-to-Sue Notice. *See, e.g., Commodari v. Long Island Univ.*, 89 F.Supp.2d 353, 383 (E.D.N.Y.2000) (the balance of equities supports excusing the 180-day waiting period).

In addition, this court disagrees with the *Martini* court that remanding such cases to the EEOC will prompt the EEOC to act. *See, e.g., Commodari*, 89 F.Supp.2d at 382 ("The EEOC cannot be cajoled into doing what it does not have the capacity to do.") It is no secret that the EEOC receives an overwhelming number of charges without receiving commensurate funding to handle those charges. In fiscal year 1999, the EEOC had a pending inventory of 40,234 charges--which is a 15-year low and a 23% decline from 52,022 at the close of fiscal year 1998. In addition, the EEOC's average processing time for resolving charges has been cut to 265 days, a reduction of 45 days from 310 days in fiscal year 1998. *EEOC Accomplishments Report for Fiscal Year 1999.* There is no reason to think that the EEOC would improve these efforts if it was prevented from terminating charges prior to the 180-day period set forth in Section 2000e-5(f)(1). Remanding this case to the EEOC would serve no purpose. The EEOC would be unlikely to act on the charge, and remand would serve only to delay the ultimate resolution of the case. With his diagnosis of AIDS, Mr. Richardson might not have that time to waste. Thus, Defendants' Motion to Dismiss for Lack of Jurisdiction is denied.

## II. MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR NEGLIGENT AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND CONSTRUCTIVE DISCHARGE

### A. FACTUAL BACKGROUND

Mr. Richardson was diagnosed with AIDS in May 1999. He alleges that Valley

Asphalt wrongfully terminated him after he disclosed that he had AIDS. After a leave of absence due to his illness, Mr. Richardson sought to return. He obtained the required work release, and Mr. Richardson returned to work on or about August 18, 1999. The next day, Brent Sumsion and Stan Jorgenson of Valley Asphalt approached Mrs. Richardson, who also worked at Valley Asphalt, and told her that no one wanted to work with her husband because he had AIDS. They asked Mrs. Richardson to tell her husband that no one wanted to work with him, which she did. The following day, Mr. Jorgenson came to Mr. Richardson's home and told him that he was terminated because he had AIDS and no one wanted him around. Subsequently, Mr. Sumsion allegedly told Mrs. Richardson that if she was not able to get Mr. Richardson to withdraw his claim for unemployment benefits, that Western Aggregates would come down hard on her.

Mrs. Richardson claims that Defendants pressured her into "firing" her husband knowing that she could not thereafter quit because she would be the family's sole means of support and health insurance. She also claims that because Valley Asphalt knew that she could not quit, it threatened her to convince Mr. Richardson to drop his claim for unemployment benefits. She claims that Defendants knew that Plaintiffs were particularly susceptible to emotional distress because of Mr. Richardson's AIDS diagnosis and the threat that Mrs. Richardson and/or their children may be HIV positive. Mrs. Richardson then quit in fear of the type of stress that she would be put under if she did not convince her husband to withdraw his claim for unemployment benefits.

Both Mr. and Mrs. Richardson have asserted claims for intentional and/or negligent infliction of emotional dismiss, claiming that Defendants' manipulation was outrageous and would shock the conscience of a decent society. Mrs. Richardson also alleges that she was constructively discharged.

## B. Discussion

### 1. Intentional and/or Negligent Infliction of Emotional Distress

Defendants argue that, even assuming that the facts alleged by Plaintiffs are true, Plaintiffs' claims for intentional and/or negligent infliction of emotional distress must be dismissed. They claim that Plaintiffs' intentional infliction claims do not rise to the level of outrageous conduct required under Utah law. They also claim that Plaintiffs' claims do not satisfy the elements of negligent infliction of emotional distress. Finally, they claim that both the negligent and intentional infliction of emotional distress claims are barred by the exclusive remedy provision of the Utah Workers' Compensation Act.

#### a. *Negligent Infliction of Emotional Distress*

■ Plaintiffs' claims for negligent infliction of emotional distress are barred by the exclusive remedy provision of the Utah Workers' Compensation Act. *Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055, 1056 (Utah 1991). In *Mounteer*, an employee brought an action against his employer for intentional and negligent infliction of emotional distress after a co-worker allegedly made a statement concerning the employee's drug use over the employer's loudspeaker. The trial court dismissed for failure to state a claim. The Utah Supreme Court affirmed, holding that because damages for emotional distress are compensable under the workers' compensation scheme, the plaintiff's claims were barred by the exclusive remedy provision. *Id.* at 1058-59. The same is true in this case.

#### b. *Intentional Infliction of Emotional Distress*

■ A plaintiff in Utah who claims intentional infliction of emotional distress must prove the following:

(1) the defendant intentionally engaged in some conduct toward the plaintiff con-

sidered outrageous in that it offends the generally accepted standards of decency and morality (2) with the purpose of inflicting emotional distress or where any reasonable person would have known such result, and (3) such emotional distress resulted.

*Matthews v. Kennecott Utah Copper Corp.,* 54 F.Supp.2d 1067, 1075 (D.Utah 1999) (citing *Russell v. Thomson Newspapers, Inc.,* 842 P.2d 896, 905 (Utah 1992)), *aff'd,* 208 F.3d 226 (10th Cir. 2000). The exclusive remedy provision of the Workers' Compensation Act shields employers from common law liability for intentional or reckless acts that injure employees in the workplace, "unless it is shown that the employer intended or directed the act which caused the emotional distress."[3] *Newsome v. McKesson Corp.,* 932 F.Supp. 1339, 1343 (D.Utah 1996) (citing *Mounteer v. Utah Power & Light Co.,* 823 P.2d 1055 (Utah 1991)).

■ At the hearing on the motion, Plaintiffs argued that their employer intended or directed the act that caused the emotional distress, and, while not explicitly stated in their Complaint, such a claim is certainly implied. Thus, Plaintiffs have alleged facts sufficient to survive a motion to dismiss based on the exclusive remedy provision of the Utah Workers' Compensation Act.

■ The next inquiry, then, is whether Plaintiffs' allegations rise to the level of outrageous conduct required under Utah law, *i.e.,* whether the actions were "of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality." *Samms v. Eccles,* 11 Utah 2d 289, 358 P.2d 344, 347 (1961). Whether the conduct is outrageous enough is a legal question for the court to resolve. *Id.* at 1075. Viewing all facts in a light most favorable to Plaintiffs, the court finds that they have alleged outrageous and intolerable conduct sufficient to permit a jury to find in their favor. If Mr. Richardson proves his allegations regarding Defendants' treatment of him, such discrimination against a person with a disability, if performed with the requisite intent, satisfies the elements of the tort of intentional infliction of emotional distress, assuming that he also proves the requisite emotional distress. *See, e.g., Retherford v. AT&T Comms.,* 844 P.2d 949, 977–79 (Utah 1992) (finding that "conduct generally labeled sexual harassment is outrageous and intolerable and, when performed with the requisite intent, satisfies the elements of the tort ...."). If the Utah Supreme Court has determined that sexual harassment is outrageous and intolerable, if performed with the requisite intent, this court believes that disability discrimination falls into the same category.

■ Similarly, the elements of the tort are satisfied if Mrs. Richardson proves her allegations regarding Defendants' treatment of her, including exploiting her need to retain her job as the sole income generator and provider of health insurance--which her husband would undoubtedly need--to coerce her into convincing her husband to give up a legal remedy to which he was entitled. Again, this assumes that she is able to prove that the conduct was performed with the requisite intent and that emotional distress resulted.

### 2. Constructive Discharge Claim

Defendants contend that Plaintiff "must allege facts sufficient to demonstrate under an objective test that a reasonable person would have viewed her working conditions as intolerable." *Heno v. Sprint/United Management Co.,* 208 F.3d 847 (10th Cir.2000) (quotations omitted).

**3.** As the *Newsome* court stated, "[i]n the absence of a showing of actual intent to inflict emotional distress, plaintiff must show that the defendant acted in a way that 'any reasonable person should have known [that such actions would cause emotional distress].'" *Newsome,* 932 F.Supp. at 1343 n. 5 (quoting *Samms v. Eccles,* 11 Utah 2d 289, 358 P.2d 344, 346 (1961)).

They contend that if an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged. *Id.* At 858. Essentially, a plaintiff must show that she had no other choice but to quit. *Id.* Defendants claim that there is no claim that the company took any action that would have made her job utterly intolerable. Thus, her claim fails.

■ The court finds that, viewing all facts in a light most favorable to Mrs. Richardson, she has alleged facts sufficient to find that under an objective test, a reasonable person would have viewed Mrs. Richardson's working conditions as intolerable and that a reasonable employee could have felt that she had no choice but to quit.

## III. WESTERN AGGREGATES' MOTION TO DISMISS

Western Aggregates claims that Plaintiffs were employed by Valley Asphalt, not Western Aggregates. Western Aggregates claims that it is neither a parent corporation to Valley Asphalt nor a subsidiary, and it has provided an affidavit to support that claim. It further claims that it had no authority over Valley Asphalt whatsoever. Thus, it claims that Plaintiffs have failed to state a claim against it.

Specifically, Plaintiffs have alleged that "Brent informed Jamee that if she was not able to get Mr. Richardson to withdraw his claim for unemployment that Defendant Western Aggregates would come down hard on Jamee." In addition, Plaintiffs allege that Western Aggregates breached its duty of reasonable care and negligently and/or intentionally inflicted emotional harm on Plaintiffs due to wrongfully terminating Mr. Richardson because of his disability.

Western Aggregates claims that it could not have terminated Mr. Richardson. It also points out that Plaintiffs allege that Brent Sumsion and Scott Sumsion, both employees of Valley Asphalt, not Western Aggregates made the threat. Western Aggregates argues that Plaintiffs have not identified the relationship between Plaintiffs and Western Aggregates or between Western Aggregates and Valley Asphalt, and because there was no relationship or contract between the parties, a duty cannot exist.

On the other hand, Plaintiffs claim that Western Aggregates and Valley Asphalt are both subsidiaries of U.S. Aggregates, Inc. Plaintiffs understood that Western Aggregates had final authority as to how employees were treated at Valley Asphalt. They claim that after Mr. Richardson was wrongfully terminated, Western Aggregates sought to have Mr. Richardson withdraw his legal claim for unemployment benefits by threatening Mrs. Richardson with intolerable working conditions.

■ Although Plaintiffs' evidence against Western Aggregates is very thin, the court declines to grant Western Aggregates' motion at this time, prior to any discovery having taken place. After discovery has taken place, and if appropriate, Western Aggregates may renew this issue in a summary judgment motion.

## IV. MOTION TO BIFURCATE TRIAL

Mr. Richardson alleges that Valley Asphalt wrongfully terminated him because of his disability. He has asserted claims for violations of the ADA and for intentional and/or negligent infliction of emotional dismiss. Mrs. Richardson alleges that she was constructively discharged after her husband was diagnosed with AIDS. She has also alleged claims for intentional and/or negligent infliction of emotional distress based upon threats that were allegedly made about her working conditions if she did not convince her husband to cease his efforts to obtain unemployment benefits.

Defendants claim that trying these two cases together places an unreasonable burden on the jury to maintain the distinction between the two cases and can serve only to mislead and confuse them, to the detri-

ment of Defendants. Defendants argue that they could be prejudiced if the cases are tried together because a jury might interject evidence regarding Mrs. Richardson's alleged constructive discharge and resulting emotional distress into Mr. Richardson's ADA claim.

Plaintiffs argue that bifurcation should be allowed only when the issues to be tried are so separate and distinct that separation will not result in an injustice. They claim that such is not the case here. It is likely that almost all of the independent witnesses would need to testify in both matters if this case was bifurcated. Thus, it would not serve judicial economy. In addition, Mrs. Richardson's case is inextricably intertwined with Mr. Richardson's wrongful termination because that termination is the foundation from which all other alleged outrageous treatment of Mrs. Richardson stemmed.

The decision to bifurcate is within the discretion of the trial court. A court should consider the following factors: (1) judicial economy; (2) convenience to the parties; (3) expedition; and (4) avoidance of prejudice and confusion. *See In re Innotron Diagnostics,* 800 F.2d 1077, 1085 (Fed.Cir.1986). At this point, the court declines to bifurcate the trial. Consideration of judicial economy, convenience to the parties, and expedition all militate in favor of one trial. In addition, it appears unlikely that a jury would be confused by the issues presented in a trial involving both Plaintiffs. While there might be some risk of prejudice, that risk can be reduced or eliminated through jury instructions on the issue. Consequently, the court denies the motion without prejudice.

## V. MOTION FOR EXTENSION OF TIME TO ANSWER COMPLAINT

Out of an abundance of caution, Defendants filed a motion seeking an extension of time to file an Answer. At the hearing, the court announced that Defendants have fifteen days after the court decides the pending motions, and thus, Defendants have until September 5, 2000 to file and serve an Answer.

## CONCLUSION

For the foregoing reasons, it is HEREBY ORDERED that

(1) Defendants' Motion to Dismiss for Lack of Jurisdiction is DENIED;

(2) Defendants' Motion to Dismiss is GRANTED in part and DENIED in part, and Plaintiffs' claims for negligent infliction of emotional distress are DISMISSED;

(3) Defendant Western Aggregates' Motion to Dismiss is DENIED, but Western Aggregates may, if appropriate, renew the issue in a future motion for summary judgment;

(4) Defendants' Motion to Bifurcate Trial is DENIED without prejudice; and

(5) Defendants' Motion for Extension of Time to Answer Complaint is GRANTED, and Defendants have until September 5, 2000 to file and serve their Answer.